Record No. 23-1229

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

ANTHONY GUNTER,

      Plaintiff-Appellant

v.

ALUTIIQ ADVANCED SECURITY SOLUTIONS, LLC.

      Defendant-Appellee

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Julie R. Rubin, District Judge)

_____

**INFORMAL RESPONSE BRIEF OF APPELLEE ALUTIIQ ADVANCED SECURITY
SOLUTIONS, LLC.**

_____

Dated: March 28, 2023

/s/ Larry R. Seegull
Larry R. Seegull
Kathleen A. McGinley
Alexander V. Cranford
Jackson Lewis P.C.
2800 Quarry Lake Drive, Suite 200
Baltimore MD 21209
Phone: 410-415-2000
Fax: 410-415-2001
Larry.Seegull@jacksonlewis.com
Kathleen.mcginley@jacksonlewis.com
Alexander.Cranford@jacksonlewis.com

*Counsel for Defendant-Appellee*

1

## STATEMENT OF ISSUES

Although Appellant's Informal Brief identifies seven[1] issues for review, there are three discernable issues on which the substance of his Appeal actually lies:

1. Did the District Court Abuse its Discretion by Awarding Dismissal as a Sanction?[2]

2. Did the District Court Fail to Assess Gunter's Ability to Pay a Court Ordered Monetary Sanction?[3]

3. Did the District Court Abuse its Discretion by Denying Gunter's Motion to Recuse?[4]

## STATEMENT OF THE CASE

### A. Relevant Procedural History

On August 25, 2021, Appellant, Anthony Gunter ("Gunter") filed an eight-count Fourth Amended Complaint (the "Complaint") raising various employment-related claims against Appellee, Alutiiq Advanced Security Solutions, LLC ("AASS" or "Appellee"). (ECF 35.) The Complaint sets forth the following causes of action: retaliation in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621, et seq. (Count One); discrimination in violation of the ADEA (Count Two); hostile work environment in violation of the ADEA (Count Three); retaliation in violation of the Maryland Fair Employment Practices Act ("MFEPA"), MD. CODE ANN., STATE GOV'T §§ 20-602 et seq. (Count Four); discrimination in violation of the MFEPA (Count Five); hostile work environment in violation of the MFEPA (Count Six); retaliation in violation of the False Claims Act, 31 U.S.C. § 3730(h) (Count Seven);

---

[1] AASS will address Issues 1-6 identified in Gunter's Informal Opening Brief. Issue 7 is not an issue to be decided. Rather, it is a rhetorical question.
[2] This issue encompasses Issues 1, 2, 3, and 5 identified in Gunter's Informal Opening Brief.
[3] This issue reflects Issue 6 in Gunter's Informal Opening Brief.
[4] This issue reflects Issue 4 in Gunter's Informal Opening Brief.

and whistleblower retaliation in violation of the Defense Contractor Whistleblower Protection Act, 10 U.S.C. § 2409 (Count Eight). (*Id.*)

On September 10, 2021, AASS took Gunter's deposition. During the deposition, counsel for AASS questioned Gunter about certain text messages that he had produced in response to AASS's Rule 34 document requests. *See* ECF 50-6 at pp. 150-178. Specifically, Appellee believed that Gunter deleted and materially altered portions of text messages between him and his AASS supervisor, Zachary Caster. Notably, Gunter relied on these text messages direct evidence in support of his retaliation and false claims act causes of action. (ECF 35 at ¶ 55, 60).

While still on site at Gunter's deposition, counsel for the parties engaged in a telephonic, off-record conference with the U.S. District Court of Maryland regarding AASS's concerns of spoliation and manipulation of evidence by Gunter. (ECF 39.) During the conference, AASS expressed its desire to engage a forensic examiner to make a forensic copy of Gunter's cell phone for analysis. (*Id.*) Immediately following the conference, U.S. District Judge Richard D. Bennett issued a Letter Order at ECF 39. The Letter Order summarizes the conference and provides that "the Court shall allow a forensic analysis of [Gunter]'s personal cell phone to be performed today, September 10, 2021 . . . ." (ECF 39; emphasis in original.)

On November 2, 2021, defense counsel requested another conference with Judge Bennett to discuss an "urgent and on-going discovery dispute."(ECF 44.) That same day, Judge Bennett referred the case to U.S. Magistrate Judge J. Mark Coulson to resolve all discovery disputes. (ECF 45.) On November 19, 2021, AASS filed its Motion for Sanctions and Dismissal (ECF 50), which went before Judge Coulson pursuant to 28 U.S.C. § 636. In its Motion for Sanctions and Dismissal, AASS argued that Gunter materially falsified several text messages with his supervisor that he quoted in his Complaint and produced in support of his claims and then presented false deposition

testimony on the topic. Appellant produced text messages with his supervisor that conflicted with the supervisor's copies of the underlying text messages, which AASS produced. (ECF Nos. 50-5 through 50-8, reproducing what AASS contends are the fraudulent text messages as well as the authentic versions.) AASS argued that the court should dismiss this action as a sanction for Gunter's misconduct and award AASS the fees and costs it incurred to investigate his misconduct and seek relief from the court. (*Id.*)

On December 28, 2021, Judge Coulson issued his Report and Recommendation (ECF 53) on AASS's Motion for Sanctions and Dismissal (ECF 50) recommending that Defendant's Motion for Sanctions be granted to (1) preclude any reference during the remainder of the case to the fraudulent text messages produced by Gunter, and (2) award as a sanction the cost of the forensic review of Gunter's cell phone that resulted from the Court's August Order (ECF 39). The Report, however, reached no conclusion on whether the text messages were in fact false or fabricated because evidence, such as expert testimony, was not presented on this topic, without prejudice to Defendant's ability to again challenge the fabrication by Gunter of the fraudulent text messages in the future or at trial. (ECF 53). AASS filed objections to the Report and Recommendation on the basis that it should be allowed to conduct further discovery on the fabrication of text messages and have the opportunity to present expert witness evidence to the Court in an evidentiary hearing prior to a ruling on the Motion for Sanctions. (ECF 54). On January 14, 2022, the Court issued a Memorandum Order (1) permitting AASS to engage a forensic expert to analyze Gunter's telephone, and (2) scheduling an evidentiary hearing with respect to the fraudulent text messages. (ECF 55).

On April 14, 2022, Judge Bennett conducted an evidentiary hearing at which AASS' forensic expert Christopher R. Racich testified and the parties presented oral argument regarding

what effect, if any, the expert's testimony ought to have on Judge Bennett's consideration of Judge Coulson's Report and Recommendation and his ultimate ruling on AASS' Motion for Sanctions and Dismissal. Mr. Racich's report and testimony concluded that the printed copies of the text messages produced by Gunter were not genuine and were altered. (ECF 58-1). He also found that the original electronic versions of the text messages were targeted for deletion. (*Id.*)

Thereafter, Judge Bennett adopted in part and modified in part the Report and Recommendation, granted in part and denied in part AASS' Motion for Sanctions and Dismissal at ECF 50, and directed AASS to file a fee petition. (ECF Nos. 67 and 68). Notably, Judge Bennett made an unequivocal factual finding that the text messages were fraudulent, and that Gunter engaged in misconduct in producing the fraudulent July 29, 2019 and August 20, 2019 text messages. (*Id.*) In his award of sanctions, Judge Bennett precluded Gunter from relying on the fraudulent text messages in the case, permitted AASS to introduce the fraudulent and authentic versions to attack Gunter's credibility at any jury trial, and ordered AASS to submit a fee petition so that the Court could determine the appropriate amount of monetary sanctions. (*Id.*) Judge Bennett also ordered that if Gunter intended to argue that he was unable to pay monetary sanctions, he must file financial information with the Court under seal. *Id.*

Before Judge Bennett could decide the full extent of the monetary sanctions to be imposed against Gunter, including attorney's fees, the Court reassigned this matter to U.S. District Judge Julie R. Rubin on April 29, 2022. On May 18, 2022, AASS filed its Motion and Memorandum in Support of Motion for Fees and Costs Arising from Order of Sanctions (ECF 71), as previously directed.

On June 1, 2022, Gunter filed a "Motion to Seal" (ECF 73). The substance of the Motion to Seal revealed that it was actually an opposition to the Court's previous award of sanctions.

5

Rather than take responsibility for the fraud he perpetrated on the Court, Gunter accused the Court of granting a frivolous motion for sanctions, claiming that Appellant's expert lied, and accused the Court of ignoring his unsupported theories. (*Id.*)

On October 6, 2022, the Court held an "on-the-record-conference" with Gunter and counsel for Appellant. (ECF 77, 84). During that conference, Gunter represented to the Court that "this case is supported by the Department of Homeland Security… So now, you know, I've got the support of the Department of Homeland Security." (ECF 84, 85).

Gunter's blatant misrepresentation is astonishing given the fact that the Court strongly admonished him six months prior for the *same statement*, which he then admitted as false. At the April 14, 2022 hearing, Gunter told Judge Bennett, "[T]he government (the Department of Homeland Security] fully supports this lawsuit." Judge Bennett responded, "[T]hat is absolutely not a correct statement of law, Mr. Gunter… As a matter of fundamental law, that is not correct on the record for you to suggest that someone has sanctified your lawsuit… I'm not going to permit you to make false statements of that ilk and try to put things on the record that are not true. What you said is not correct. Do you acknowledge that now?" Gunter conceded, "Your Honor, you're correct that I worded it wrong." (ECF 85 at p. 6).

Thereafter, on October 13, 2022, the court invited the parties to submit additional briefing on the sanctions to be imposed, up to and including dismissal, to address Gunter's misconduct. (ECF 80).

On October 18, 2022, Appellee filed a Supplemental Memorandum in Support of Dismissal as a Sanction. (ECF 81). The Supplemental Memorandum emphasized that Courts inside and outside of the Fourth Circuit impose dismissal as a sanction in cases where a party's fraudulent

conduct is similar to Gunter's conduct in this case, and even in those cases where the conduct is less severe than Gunter's actions. Gunter did not file a Supplemental Memorandum or Response.

**B.  The First Ruling to Be Reviewed in This Appeal: The District Court Order (1) Dismissing The Case With Prejudice as a Sanction, and (2) Requiring Gunter to Pay $10,000.00 to AASS as an Additional Sanction For Gunter's Fraud On The Court.**

On March 2, 2023, the Court issued a Memorandum Opinion and Order ("March 2 Order"). (ECF 85, 86). The March 2 Order vacated Judge's Bennett's Order awarding sanctions short of dismissal (ECF 68), granted AASS' Motion for Sanctions (ECF 50) upon *sua sponte* reconsideration, and granted in part and denied in part AASS' Motion for Fees and Costs (ECF 71). Specifically, Judge Rubin dismissed Gunter's claim as a sanction for his fraudulent conduct and directed Gunter to pay $10,000 to AASS as partial reimbursement of costs associated with the engagement of forensic and expert witnesses services. (*Id.*) The March 2 Order provided a detailed explanation of the facts underlying Magistrate Judge Coulson's and Judge Bennett's findings that Gunter engaged in egregious misconduct and fraud upon the Court, including but not limited to:

- In his Complaint, Gunter cited and quoted text messages with his supervisor as direct evidence in support of his Complaint. (ECF 50-1 to 50-8).

- Gunter produced only paper copies of these text messages and failed to produce electronic and other text messages that were later identified via a forensic copy of the supervisor's cell phone. (ECF 39).

- Those cited text messages retrieved from the supervisor's cellphone materially differ from those produced in paper in discovery by Gunter in ways that do not support Gunter's claims. *(*ECF Nos. 50-1 to 50-8).

- An expert forensic examiner, J. Christopher Racich opined that Gunter "targeted for deletion" the missing text messages and that certain paper text messages relied upon by Gunter "were not genuine and were altered." *See* ECF 58-1, p. 18.

- Gunter provided unbelievable and factually unsupported theories to explain the discrepancies in his produced text messages, including that Verizon deleted them, *see* ECF 50-6 at pp.156-159, and that Department of Homeland Security special agents arrived at his home and seized his phone. *Id.* at pp. 170, 178. Later, he contended that his phone sustained water damage. (ECF 50-6 at p. 11).

- Gunter provided no explanation as to why his cellphone contained text messages from as early as 2017, but does not contain the text messages in 2019 found to be spoliated. (ECF 50-7).

In addition, Judge Rubin detailed new facts regarding Gunter's continued fraud on the Court that occurred after Judge Bennett's ruling on April 18, 2022. (ECF 67, 68). (ECF 85). Specifically, the Court described Appellant's conduct at the October 6, 2022 conference in stating the same lie to the Court on October 6 as he did on April 14, 2022. (*Id.*) The Court in its March 2 Order described that it was left "gobsmacked" due to Gunter's unflinching and ready dishonesty to the Court after having been instructed not to make "false statements of that ilk" and his admission in April that the statement was indeed false. (*Id.*)

The Memorandum Opinion makes two rulings. First, the Court dismissed the matter for Gunter's continuing misconduct *sua sponte* citing its inherent authority to do so, as well as FRCP 26(g), 37(c)(1), and 41(b). (ECF 85). The Court noted that it possessed clear and convincing evidence that Gunter engaged in fraudulent conduct through the testimony of Appellee's expert, Mr. Racich. (*Id.*) Further, the Court noted that dismissal was the appropriate sanction based on

Gunter's brazen misconduct and analogous caselaw. (*Id.*) Second, the Memorandum Opinion, after making a detailed analysis of Gunter's ability to pay a monetary sanction, ordered Gunter to pay $10,000.00 to Defendant as partial reimbursement of costs associated with the engagement of forensic and expert witness services. (*Id.*)

C.      **The Second Ruling to be Reviewed in this Appeal: The District Court Order Denying Gunter's Motion to Recuse.**

On January 26, 2023, the District Court entered an order denying Gunter's Motion to Recuse Judge Rubin (ECF 79) from the matter. (ECF 83). The Court reasoned that Gunter provided no basis, nor did one exist, for Judge Rubin to recuse herself from the case, noting that "the Court has not bias or prejudice for or against either party, no personal knowledge of the matter, no interest in the outcome, and no condition exists which could cause a person to reasonably question the impartiality or neutrality" of Judge Rubin. (*Id.*)

**STANDARD OF REVIEW**

The March 2 Order that is the subject of this Appeal is an order imposing on Appellee dual sanctions – dismissal and monetary sanctions. An appellate court reviews all aspects of a sanctions order by a district court for abuse of discretion. *Byrd v. Hopson*, 108 F. App'x 749, 752 (4th Cir. 2004) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 55, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991) ("We review a court's imposition of sanctions under its inherent power for abuse of discretion.") (internal citations omitted)). A district court decision to impose sanctions is entitled to substantial deference since the district court is in the best position to review the factual circumstances and render an informed judgment as it is intimately involved with the case, the litigants, and the attorneys on a daily basis. *Byrd* at 752.

Additionally, the Court reviews "the factual findings underpinning" a sanctions award "for clear error," *Newport News Holdings Corp. v. Virtual City Vision, Inc.*, 650 F.3d 423, 443 (4th

Cir. 2011), and issues of law de novo. *Resorts of Pinehurst, Inc. v. Pinehurst Nat'l Corp.*, 148 F.3d 417, 423 (4th Cir. 1998). While "[a] district court's decision to impose sanctions is entitled to substantial deference," *Blue v. Dep't of Army*, 914 F.2d 525, 538 (4th Cir. 1990), abuse of discretion may be found where "'on the entire evidence [the Court is] left with the definite and firm conviction that a mistake has been committed.'" *Harvey v. CNN, Inc.*, 48 F.4th 257, 276 (4th Cir. 2022) (citing *Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S. Ct. 1504, 84 L. Ed. 2d 518 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395, 68 S. Ct. 525, 92 L. Ed. 746 (1948))).

An appellate court reviews a judge's recusal decision for abuse of discretion. Generally, courts have only granted recusal motions in cases involving particularly egregious conduct. In order to disqualify a judge, the bias or prejudice must, as a general matter, stem from a source outside the judicial proceeding at hand. *United States v. Robinson*, 770 F. App'x 627, 628 (4th Cir. 2019).

## SUMMARY OF ARGUMENT

Appellant's Opening Brief (4th Cir. ECF 12) argues that the Court did not have the authority to dismiss his Complaint as a sanction for the blatant fraud he perpetuated on the Court. Quite the opposite, the authority cannot be clearer that the Court absolutely holds this power. A Court possesses the inherent authority to dismiss a case as a sanction where a party engages in egregious fraud upon the Court. *Projects Mgmt. v. Dyncorp Int'l LLC,* 734 F.3d 366 (4th Cir. 2013). Additionally, in cases where a party commits fraud on the Court, the Court may dismiss an action pursuant to Federal Rule 41(b), 26(g)(3), 37(c)(1)(C). Here, the facts are clear, convincing and supported – Gunter cited in his Complaint and produced to AASS fraudulent and fabricated evidence, spoliated critical evidence to this case, and continued to concoct and communicate

brazen falsehoods to AASS and the Court to support his fraudulent actions. Notably, in his Informal Opening Brief, Gunter does not outright deny the fraud he committed. Judge Rubin, empowered by the inherent authority that District Court Judges possess, as well as the Federal Rules, exercised the discretion afforded to her by dismissing Gunter's claim for his misconduct.

Gunter also claims that the March 2 Order, including the Memorandum Opinion, failed to consider whether he could afford to pay the $10,000.00 monetary sanction the Court awarded to Appellee. Gunter fails to recognize that the March 2 Order spends two pages assessing his capacity to pay, outlining his assets, liabilities, and income – ultimately deciding to cap his monetary sanction at $10,000 based on that capacity, rather than the $17,827.38 set forth in AASS's Motion for Fees and Costs (ECF 71). (ECF 85.) The Court's reasoning is sound. Gunter's argument does not set forth any "clear error" in the facts relied on for that assessment other than the fact that he simply disagrees with the decision.

## ARGUMENT

### 1.    The District Court Did Not Abuse Its Discretion by Dismissing Gunter's Complaint as a Sanction.

Gunter's Brief purports to challenge this Court's Order dismissing his case on two grounds. First, Appellant challenges whether the factual findings are sufficient to support an award of sanctions. Second, Appellant challenges the Court's authority to dismiss an action as a sanction. Both arguments wholly lack merit.

### A.    There is No "Clear Error" in the District Court's Factual Findings Underpinning its Decision to Sanction Appellant.

The District Court's decision to dismiss Appellant's action as a sanction is based on the central factual finding that Gunter "engaged in a deliberate, knowing, and intentional scheme to create false documents on which to base his claims, and destroyed other documents that he deemed helpful to his cause." (ECF 85 at p. 23). In support, the District Court "credits the testimony of Mr.

11

Racich[5] in its entirety, which is to say the Court finds by clear and convincing evidence that the text messages… dated July 29, 2019 and August 20, 2019, respectively… are not genuine. They are, in the words of Judge Bennett, 'in fact fraudulent.'" (ECF 85 at p. 16).

The March 2 Order also found that:

> The court finds clear and convincing evidence that Mr. Gunter intentionally and knowingly created false, fraudulent documents on which he relies to state and prove his claims to this court, and which he produced in discovery for that purpose. Further, the court finds by clear and convincing evidence that [Gunter] engaged in the intentional, wholesale spoliation (i.e., deliberate deletion and failure to produce) of six text messages dated August 31 to September 5, 2019. (See spoliated text messages obtained through forensic examination of [Gunter]'s cell phone at ECF 50-1 and 9-11.)

*Id.*

The Court also found that Gunter's dishonest behavior extended beyond the fabrication and spoliation of evidence. (ECF 85 at p. 6). The Court found that Gunter engaged in "egregious" fraud on the Court subsequent to Judge Bennett's ruling. *Id.* at p. 23. Specifically, the March 2 Order cites to Gunter's repeated representation to the Court that the government "sanctifies" his case. *Id.* The Court noted that "Mr. Gunter demonstrated with searing clarity to this court that he does not countenance rules of candor to the tribunal and ethical conduct in litigation by availing himself of the opportunity to persuade a different judge that the federal government 'supports' his case." *Id.* at p. 23. Gunter's conduct left the Court "gobsmacked." *Id.* at p. 6.

As set forth above, the "factual findings underpinning" an award of sanctions are reviewed under the clear error standard. The clear error standard allows for a reversal only "[w]hen, after an examination of the entire evidence, the reviewing court is left with the definite and firm conviction that a mistake has been committed, clear error exists and it is the duty of the reviewing court to

---

[5] Mr. Racich's Report is located at ECF 58-1. Appellant is still having the April 14, 2022 hearing transcribed.

correct this mistake." *McLennan v. Am. Eurocopter Corp.*, 245 F.3d 403, 408 (5th Cir. 2001); *see also Anderson v. Bessemer City*, 470 U.S. 564, 566, 105 S. Ct. 1504, 1508, 84 L.Ed.2d 518, 524 (1985) ("A finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. This standard plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently").

Here, a review of the ECF record in this case reveals the following:

- Gunter cited and quoted text messages with his supervisor as direct evidence in support of his Complaint.  (ECF 35 at ¶ 55, 60).

- Those cited text messages retrieved from the supervisor's cellphone materially differ from those produced in paper in discovery by Gunter in ways that do not support Gunter's claims. *(Compare* ECF Nos. 50-1 to 50-8).

- Gunter did not produce certain messages with his supervisor in electronic form or at all. *See, e.g.,* ECF 50-4; *see also* ECF 58-1.

- An expert forensic examiner, J. Christopher Racich, opined that Gunter "targeted for deletion" the missing text messages and that certain text messages relied upon by the Gunter "were not genuine and were altered." (*See* ECF 58-1, p. 18).

- Gunter repeatedly represented falsities to the Court, including that the "Department of Homeland Security supports this lawsuit," even after an explicit instruction from Judge Bennett to refrain from doing so. (ECF 84, 85 at p. 23).

- Gunter provided, under oath in his deposition, unbelievable and factually unsupported theories to explain the discrepancies in his produced text messages, including that Verizon deleted them, *see* ECF 50-6 at pp.156-159, and that Department of Homeland Security

special agents arrived at his home and seized his phone. (*Id.* at pp. 170, 178). Later, he contended that his phone sustained water damage. (ECF 50-6 at p. 11).

- Gunter provides no explanation as to why his cellphone contained text messages from as early as 2017 but does not contain the text messages found to be spoliated. (ECF 50-7).

In sum, there is overwhelming evidence to support the factual findings of the Court that Gunter intentionally and knowingly created false evidence, spoliated evidence, and continually made false representations to the Court and under oath in this case. Additionally, Gunter admitted that the alteration of text messages occurred. (ECF 51 at p. 7) ("[Defendant] did not find the exact same message as was said to have been found on the defendant's cell phone, which would clearly prove alterations"). Gunter also provided unbelievable, inconsistent, and factually unsupported explanations for the fabricated evidence and the assertions made to the Court. *See* (ECF 85 at p. 6, 8-11). As a result, there is no basis to find that the District Court committed clear error in its factual findings of fraud by Gunter that it used to underpin its award of sanctions.

**B.        The Court Possessed the Authority to Dismiss an Action as a Sanction.**

Throughout his Opening Brief, Appellant questions the authority of the Court to issue its decision to dismiss Appellant's action as a sanction for his fraud. The authority is clear on this issue. The Court can dismiss an action based upon a finding of fraud on the court under its inherent authority, FRCP 41(b), FRCP 37, and FRCP 26.

**i.        The District Court is Authorized to Dismiss a Matter as a Sanction *Sua Sponte*.**

In the March 2 Order, the Court noted four sources of authority to dismiss Appellant's action based on the factual findings of misconduct and fraud on the Court: (1) the Court's inherent

14

powers, (2) FRCP 26(g)(3), (3) FRCP 37(c)(1), and (4) FRCP 41(b). All of the cited rules and this

Court's inherent powers affirm the District Court's decision.

### a.    The District Court Possesses Inherent Authority to Dismiss a Matter *Sua Sponte*.

Binding precedent is overwhelmingly clear that the District Court possesses "inherent

powers" to control the nature of the proceeding, including the imposition of sanctions to enforce

professionalism, candor, and court rules and decorum *sua sponte*. The Supreme Court detailed a

District Court's inherent authority as follows:

> It has long been understood that certain implied powers must necessarily result to
> our Courts of justice from the nature of their institution, powers which cannot be
> dispensed with in a Court, because they are necessary to the exercise of all others.
> For this reason, Courts of justice are universally acknowledged to be vested, by
> their very creation, with power to impose silence, respect, and decorum, in their
> presence, and submission to their lawful mandates. These powers are governed not
> by rule or statute but by the control necessarily vested in courts to manage their
> own affairs so as to achieve the orderly and expeditious disposition of cases.

*Chambers v. NASCO, Inc*., 501 U.S. 32, 43, 111 S. Ct. 2123, 2132, 115 L.Ed.2d 27, 44 (1991); *see

also Projects Mgmt. v. Dyncorp Int'l LLC,* 734 F.3d 366 (4th Cir. 2013) ("[d]ue to the very nature

of the court as an institution, it must and does have an inherent power to impose order, respect,

decorum, silence, and compliance with lawful mandates. A court's inherent power includes the

ability to order the dismissal of a case…"); *see also United States v. Shaffer Equip. Co*., 11 F.3d

450 (4th Cir. 1993) (" (holding that a court's inherent power to dismiss a case "is organic, without

need of a statute or rule for its definition, and it is necessary to the exercise of all other powers").

In *Chambers,* the Supreme Court further defined the scope of disciplinary actions a Court

could impose based upon their inherent authority, including the imposition of sanctions. **"**Federal

courts have the inherent power to manage their own proceedings and to control the conduct of

those who appear before them. In invoking the inherent power to punish conduct which abuses the

judicial process, a court must exercise discretion in fashioning an appropriate sanction, which may range from dismissal of a lawsuit to an assessment of attorney's fees." *Chambers,* 501 U.S. 32, 33. In *Chambers,* the Supreme Court also noted that a sanction of dismissal may be imposed *sua sponte. Id.* at 45. Further, this Court held that a district court exercising its inherent authority to impose sanctions may do so *sua sponte* and must consider the whole of the case in choosing the appropriate sanction. *Projects Mgmt*. 734 F.3d 366, 375; *see also Hazel-Atlas Glass Co. v. Hartford-Empire Co*., 322 U.S. 238, 246, 64 S. Ct. 997, 88 L. Ed. 1250, 1944 Dec. Comm'r Pat. 675 (1944) ("The public welfare demands that the agencies of public justice be not so impotent that they must always be mute and helpless victims of deception and fraud."); *Brickwood Contractors, Inc. v. Datanet Eng'g, Inc.*, 369 F.3d 385, 389 n.2 (4th Cir. 2004) (noting that the court has the authority to impose sanctions *sua sponte* under either Rule 11 or under the court's inherent authority); *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir. 1989) ("It strikes us as elementary that  a federal district court possesses the inherent power to deny the court's processes to one who defiles the judicial system by committing a fraud on the court").

Specific to the invocation of the Court's inherent authority to dismiss an action, this Court noted that "[o]rders of dismissal are appropriate 'when a party deceives a court or abuses the process at a level that is utterly inconsistent with the orderly administration of justice or undermines the integrity of the process.'" *Projects Mgmt*, 734 F.3d 366, 373. As set forth above, the record presents no doubt that Gunter's actions in falsifying evidence, quoting it in his Complaint, and perpetrating lies about the false evidence and this case deceived the court and abused the judicial process.

Notably, this Court mandated that "[b]efore exercising its inherent power to dismiss a case based on the wrongdoing of a party in the judicial process, a Court must consider the following

factors: (1) the degree of the wrongdoer's culpability; (2) the extent of the client's blameworthiness if the wrongful conduct is committed by its attorney, recognizing that we seldom dismiss claims against blameless clients; (3) the prejudice to the judicial process and the administration of justice; (4) the prejudice to the victim; (5) the availability of other sanctions to rectify the wrong by punishing culpable persons, compensating harmed persons, and deterring similar conduct in the future; and (6) the public interest." *Id.* at 374.

As set forth in detail in the March 2 Order, Gunter's egregious conduct, including fabricating and spoliating evidence and the misrepresentations to the Court, heavily weigh each of the enumerated factors in favor of dismissal. (ECF 85).

Further, the Court's inherent authority authorizes it to reconsider whether the previous sanctions award was sufficient given the egregious nature of Gunter's misconduct and fraud upon the Court. The Supreme Court in *Dietz v. Bouldin*, 579 U.S. 40, 46-47, 136 S. Ct. 1885, 1892, 195 L.Ed.2d 161, 170-71 (2016) "recognized that a district court ordinarily has the power to modify or rescind its orders at any point prior to final judgment in a civil case." *See also John Simmons Co. v. Grier Bros. Co.*, 258 U.S. 82, 88, 42 S. Ct. 196, 66 L. Ed. 475, 1923 Dec. Comm'r Pat. 669 (1922) ("If it be only interlocutory, the court at any time before final decree may modify or rescind it."); *see also, e.g., Faye v. High's of Baltimore*, 541 F. Supp. 2d 752, 756-57 (D. Md. 2008) (relying on inherent authority of the court to rescind interlocutory order).

In *Esposito v. Suffolk Cty. Cmty. Coll.*, 517 F. Supp. 3d 126 (E.D.N.Y. 2021), the Court, exercising its inherent authority, reconsidered an award of sanctions, ultimately ordering dismissal. Similar to the case at bar, the Court first imposed sanctions short of dismissal based upon the plaintiff's fabricated evidence – a forged doctor's note. *Id. at* 132. Subsequently, in summary judgment proceedings, the plaintiff echoed false testimony. The Court noted that the "echo of her

uncorrected false testimony emerging in response to summary judgment further undermines any hope that plaintiff has seen the error of her ways. Enough is enough." *Id.* at 133. Thereafter, identical to the situation before the District Court in this case, the *Esposito* court determined the outstanding issue of the attorney's fees award. In doing so, the Court noted that its analysis compelled reconsideration of the prior sanctions remedy[6], citing its inherent authority. *Id.* The Court *sua sponte* reversed the previous award of sanction and dismissed the case noting that it had "no confidence that plaintiff will not engage in misconduct." *Id.* at 137.

This Court faced similar circumstances in *Projects Mgmt., supra.* In *Projects Mgmt,* the Court granted Defendant's Motion for Sanctions for discovery abuses but, initially, failed to dismiss the case. *Projects Mgmt.* 734 F.3d 366, 371. Instead, the District Court ordered the plaintiff to produce both of its Rule 30(b)(6) designees for additional depositions and costs to be borne by plaintiff. The District Court further ordered that the factual substance of each late-produced document be deemed admitted pursuant to Rule 37(c)(1)(C) of the Federal Rules of Civil Procedure. *Id.*

The Court later reconsidered its award of sanctions *sua sponte*, after plaintiff demonstrated continued callousness for the Federal Rules by not making its witnesses available for deposition until two days before trial, and the Court found that the prior remedies it had ordered fell "far short of remedying the prejudice." *Id.* at 373. As such, the Court invoked its inherent authority and dismissed the case. The Fourth Circuit affirmed the sanction of dismissal noting – "the district court first imposed lesser sanctions, but later found that those lesser sanctions did not alleviate the

---

[6] Similar to this case, in *Esposito, supra,* the first sanctions award was made by a different judge than the one who dismissed the case.

prejudice caused by PMC. Accordingly, PMC has not demonstrated that the district court here abused its discretion." *Id.* at 376-77.

Here, similarly, this Court issued sanctions short of dismissal after concluding that Appellant engaged in egregious fabrication of evidence and fraud upon the Court. Importantly, during the October 6, 2022 status conference with Judge Rubin, Appellant continued to falsely assert that the "Department of Homeland Security supports this litigation," despite the fact that Judge Bennett explicitly informed him previously not to pedal that unsupported theory in this litigation and Appellant admitted his statement was false. (ECF 85 at p. 23). As such, this Court exercised its inherent authority to reconsider its previous award of sanctions, and, after considering the relevant factors outlined above (ECF 85 at p. 22-27), determined that dismissal was appropriate. As the Court did in *Projects Mgmt.*, the Court properly exercised its inherent authority and, as such, did not abuse its discretion.

## b. The Federal Rules of Civil Procedure Authorize the Court to Dismiss a Matter as a Sanction *Sua Sponte*.

First, because Gunter falsely testified that he produced all relevant text messages, but he did not, as confirmed by the Court, sanctions under FRCP 26 are available and appropriate. FRCP 26(g)(3) provides that "if a certification violates this rule without substantial justification, the court, on motion or *on its own*, must impose an appropriate sanction." Rule 26 requires "a reasonable effort to assure that the client has provided all information and documents responsive to a discovery demand," which Gunter violated. (ECF 53, 67). Dismissal is a sanction available to a Court enforcing Rule FRCP 26(g). *See, e.g.*, *Osei v. Staples, Inc.,* Civil Action No. PX 8:20-cv-00040, 2021 U.S. Dist. LEXIS 73248 (D. Md. Apr. 15, 2021).

Second, sanctions under FRCP 37 are available and proper because the Court found Gunter spoliated relevant text messages. (ECF 53 at p. 8-10). FRCP 37(c)(1) authorizes the court to impose

appropriate sanctions for failure to provide electronically stored information as required by FRCP 37(e), which include dismissal, after an opportunity to be heard (including at the evidentiary hearing and in briefing, which Gunter has been afforded) and after the court employed a four-part test to determine the appropriate sanction, which the District Court performed in its March 2 Order. *Anderson v. Found. For Advancement, Educ. & Employment of Am. Indians*, 155 F. 3d 500, 504 (4th Cir. 1998).

Third, sanctions under Rule 41(b) are available and proper because the District Court found Gunter failed to produce all relevant text messages in violation of his discovery obligations. *See* ECF 53 at p. 4; ECF 67. FRCP 41(b) authorizes the court, whether on motion of a party or *sua sponte*, to involuntarily dismiss an action for failure to comply with the Federal Rules of Civil Procedure or an order of the court. *Attkisson v. Holder*, 925 F. 3d 606, 625 (4th Cir. 2019).

ii.         **The Court's Dismissal Is Consistent With Precedent.**

When reviewing an award of sanctions, there is no abuse of discretion unless "on the entire evidence [the Court is] left with the definite and firm conviction that a mistake has been committed*." Six v. Generations Fed. Credit Union*, 891 F.3d 508, 519 (4th Cir. 2018). As set forth above, there is clear and convincing evidence that Gunter fabricated evidence and committed fraud on the Court. The fraudulent messages replaced "I've told them you've been pretty straight," with "I've told them about the [Inspector General] investigation." *See* ECF 50-2, 50-3. Gunter's fraudulent conduct is amplified by the fact that he principally relied on the fabricated text messages as evidence he engaged in a protected activity in support of his retaliation claims. (ECF 35 at ¶ 55, ¶ 59, ¶ 103 (Gunter "informed the Defendant he made a complaint about the Defendant's…conduct to the OIG"); ¶ 110 ("Defendant knew…. he had made a complaint with the OIG")). Astonishingly, Gunter even quotes the altered text message in support of his retaliation claim. (ECF 35 at ¶ 55).

Based on those clear facts, the District Court was not mistaken when it dismissed Gunter's case because dismissal is consistent with precedent.

As set forth below, it is customary for courts to dismiss cases where a party is found to have fabricated evidence. *See, e.g., Volcan Grp., Inc. v. Omnipoint Communs*., Inc., 552 F. App'x 644 (9th Cir. 2014). Most recently, the District Court of Maryland dismissed an action where it found the plaintiff was accused of using a fabricated police report in a malicious prosecution action. *Dewitt v Ritz,* 2021 U.S. Dist. LEXIS 45869 (D. Md. 2021). Two forensic examiners reviewed the "questioned document" concluding that it was not authentic, but, rather, fabricated. *Id.* at p. 21. This Court noted that alternatives to dismissal "would be inadequate. The gravity of Plaintiff's misconduct demands application of the strongest penalty available." *Id.* at p. 35. While this Court recognized the "strong policy favoring disposition on the merits," it found that the Defendant's fabrication was "so extreme as to forfeit his right to use the [judicial] process." *Id.* at p. 37.

The District Court of Maryland also dismissed a case where it found the plaintiff submitted falsely notarized affidavits. *Green v. Mayor & City Council of Baltimore*, 198 F.R.D. 645 (D. Md. 2001). This Court noted that "no lesser sanction than dismissal could conceivably uphold the integrity of this Court as a place where the submission of false documents or testimony is not tolerated." *Id.* at p. 647. Additionally, this Court noted that "[o]nce a litigant chooses to practice fraud, that misconduct infects his cause of action." *Id.*

In a trademark and unfair competition action in Virginia earlier this year, the plaintiff attached fabricated exhibits to its Amended Complaint. *For Life Prods., LLC v. Virox Techs. Inc*., 2022 U.S. Dist. LEXIS 93880 (W.D. Va. May 25, 2022). The Court dismissed the action, noting that, "fabrication of evidence is a 'near-classic' example of an abuse of the judicial process," and

that it was "difficult to imagine a greater prejudice to the judicial system than the fabrication of evidence." *Id.* at p. 23-27.

Similarly, a North Carolina Court dismissed a case where the Plaintiff attached fabricated work journals and false affidavits to a Response to a Motion for Summary Judgment. *Sinclair v. Mobile 360, Inc.*, 2011 U.S. Dist. LEXIS 96911 (W.D.N.C. Aug. 29, 2011). In response, the Court noted, "[D]ismissal with prejudice was the only sanction serious enough to rectify the wrongs committed by Plaintiff." *Id.* at p. 24.

And, similar to the instant case, courts have dismissed cases due to fabricated electronic messages. *See Barber v. Coastal Horizons Ctr., Inc.*, 2022 U.S. Dist. LEXIS 146912 (E.D.N.C. July 1, 2022) (Court dismissed action after it found that Plaintiff fabricated an email and produced it in discovery); *Salgam v. Advanced Software Sys.*, 2020 U.S. Dist. LEXIS 205360 (E.D. Va. July 2, 2020) (the Court dismissed Plaintiff's claims after Plaintiff was responsible for the creation and submission of falsified emails produced in discovery).

The position of courts in the Fourth Circuit is replicated in courts in other Circuits. Indeed, the Tenth Circuit Court of Appeals affirmed a District Court's dismissal after it found fabricated evidence by the plaintiff:

> The submission of falsified evidence substantially prejudices an opposing party by casting doubt on the veracity of all of the culpable party's submissions throughout litigation. The prejudiced party is forced either to attempt independent corroboration of each submission, at substantial expense of time and money, or to accept the real possibility that those discovery documents submitted by the opposing party are inaccurate. Nor is the exclusion of the fabricated evidence always enough to deter discovery misconduct. Litigants would infer that they have everything to gain, and nothing to lose, if manufactured evidence merely is excluded while their lawsuit continues.

*Garcia v. Berkshire Life Ins. Co. of Am.*, 569 F.3d 1174, 1181 (10th Cir. 2009) (internal quotations and citations omitted); *see also Lee v. Trees, Inc.*, No. 3:15-cv-0165-AC, 2017 U.S. Dist. LEXIS 183443 (D. Or. Nov. 6, 2017) (falsified time-stamps on text messages produced in discovery necessitated dismissal); *Slate v. ABC, Inc*., 941 F. Supp. 2d 27 (D.D.C. 2013) (fabrication of letter qualified as basis for dismissal); *Vargas v. Peltz*, 901 F. Supp. 1572, 1579 (S.D. Fla. 1995) ("presenting false evidence in support of her claims compels dismissal of this case"); *Amonoo v. Sparling*, 2017 U.S. Dist. LEXIS 95485, *10 (W.D. Wis. June 21, 2017) ("if I confirm that plaintiff falsified the evidence, dismissal is the most appropriate sanction").

Similar to Gunter's misconduct, in a case out of Georgia, an employee added language to communications with her employer that purported to support discriminatory intent. *Neal v. IMC Holdings, Inc*., 2009 U.S. Dist. LEXIS 138089 (N.D. Ga. Mar. 31, 2009). Specifically, the plaintiff fabricated an email with her employer by adding the phrase "as a mother," to the end of an email where the employer stated, "Perhaps the commute to Chicago is not fitting into your lifestyle." *Id.*[7] at 2. The Court dismissed the matter, reasoning that any lesser sanctions "are insufficient in this case where Plaintiff has proven herself an untrustworthy party." *Id.* at 7.

Accordingly, as evidenced by the foregoing cases, where a party commits egregious fraud on the court in the form of fabrication or falsification of evidence, the correct sanction is dismissal. Based on the severity of Gunter's misconduct and his blatant disregard for the integrity of the judicial process, the same sanction is supported here.

---

[7] Similarly, Gunter replaced "I've told them about the [Inspector General] investigation," to a text message that when unaltered stated, "I've told them you've been pretty straight." *See* ECF 50-2, 50-3. Gunter expressly quotes the altered version in support of his retaliation claim. (ECF 35 at ¶ 55).

2.    **The Court Did Not Fail to Consider Ability to Pay When Awarding Monetary Sanction.**

A District Court's authority to sanction "derives from courts certain 'inherent powers,' not conferred by rule or statute, "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Six v. Generations Fed. Credit Union,* 891 F.3d 508, 519 (4th Cir. 2018) (quoting *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 137 S. Ct. 1178, 1186, 197 L. Ed. 2d 585 (2017)). Courts are empowered "to fashion an appropriate sanction for conduct which abuses the judicial process," such as "an order . . . instructing a party that has acted in bad faith to reimburse legal fees and costs incurred by the other side." *Id. Harvey v. CNN, Inc.*, 48 F.4th 257, 276 (4th Cir. 2022).

In imposing these sanctions, the District Court should consider, *inter alia*, the severity of the conduct, the minimum amount of sanctions needed to deter future abuses, the reasonableness of the requested fees and costs, and offender's ability to pay. *See Byrd v. Hopson*, 108 F. App'x 749, 756 (4th Cir. 2004); *Robeson Def. Comm. v. Britt (In re Kunstler*, 914 F.2d 505, 523 (4th Cir. 1990); *see also Trimper v. City of Norfolk, Va.*, 58 F.3d 68, 73 (4th Cir. 1995) (listing factors for determining reasonable attorneys' fees under § 1988(b)).

Gunter's representation that the Court somehow failed to consider his ability to pay the requested monetary sanction is another brazen misrepresentation. The court spent an entire section of its Memorandum Opinion noting that Gunter bears the burden of proving his financial status and evidencing inability to pay the sanctions. ECF 85 at p. 28 (citing *in re Kunstler*, 914 F.2d 505, 524 (4th Cir. 1990) ("burden upon the parties being sanctioned to come forward with evidence of their financial status")). In fact, the Court explicitly went through Gunter's submitted assets, liabilities, monthly costs, and earning capacity to determine that "Mr. Gunter is capable of paying the costs associated with the forensic image of Mr. Gunter's cell phone." As such, the Court limited

the sanction to only $10,000.00 based on its determination of Gunter's capacity to pay that amount. Gunter may disagree with the result, but there exists no abuse of discretion because the Court analyzed all relevant factors, and further, there is no clear error in the Court's factual finding of Gunter's ability to pay inasmuch as the documents he submitted under seal support the Court's factual finding.

### 3. The Court Did Not Abuse Its Discretion by Denying Gunter's Motion to Recuse.

On October 12, 2022, Gunter filed a Motion to Recuse Judge Rubin from this case. In his Motion to Recuse, Gunter argued that since Judge Rubin expressed an opinion on the merits of the case, she was sufficiently biased to necessitate recusal. Gunter also indicated that Judge Rubin's indication that she would take additional briefing on the issue of sanctions necessitated recusal.

Recusal is governed by 28 U.S.C.S. § 455. Section 455(a) provides that "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." Disqualification is required when the judge "has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." 28 U.S.C. § 455(b)(1). "In short, the nature of the judge's bias must be personal and not judicial." *People Helpers Found. v. City of Richmond*, 12 F.3d 1321, 1325 (4th Cir. 1993).

This Court noted that "[w]e review a judge's recusal decision for abuse of discretion." *Kolon Indus. Inc. v. E.I. DuPont de Nemours & Co*., 748 F.3d 160, 167 (4th Cir. 2014). Generally, "courts have only granted recusal motions in cases involving particularly egregious conduct." *Belue v. Leventhal*, 640 F.3d 567, 573 (4th Cir. 2011). In order to disqualify a judge, the "bias or prejudice must, as a general matter, stem from 'a source outside the judicial proceeding at hand.'" *Id*. at 572.

25

"[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United States,* 510 U.S. 540, 114 S. Ct. 1147 (1994). "Opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Id.; see also United States v. Robinson*, 770 F. App'x 627, 628 (4th Cir. 2019).

In *People Helpers Found, supra,* this Court held that disqualification was not warranted where a Judge expressed his disapproval about the Defendant's conduct, noting that "[t]he Judge's comments, at worst, show his disapproval of the actions taken by the City, but they are not indicative of any personal bias." *People Helpers Found. v. City of Richmond*, 12 F.3d 1321, 1326 (4th Cir. 1993). In *Robinson, supra,* the Court upheld a District Court's denial of a Motion to Recuse where the sole basis for the Motion to Recuse was the Court's earlier rulings, rather than any evidence of personal bias by the judge.

Here, similarly, the Motion to Recuse is based upon Judge Rubin's indication that she would take additional briefing on the issue of sanctions and her comments on the merits of the case. However, neither of these allegations are indicative of any personal bias toward AASS on the part of Judge Rubin, nor can they establish that she was not impartial in any way. In sum, Gunter is requesting that this Court rule that the opinions expressed by the Court regarding the facts of this case necessitate recusal. However, in 2019, this Court confirmed that "judicial rulings and opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings almost never constitute a valid basis for a bias or partiality motion." *CarMax Auto Superstores, Inc. v. Sibley*, 767 F. App'x 462, 465 (4th Cir. 2019). Accordingly, the District Court did not abuse its discretion by denying Gunter's Motion to recuse.

## **<u>CONCLUSION</u>**

For the foregoing reasons, the basis for Gunter's Appeal, as outlined in his Informal

Opening Brief, is without merit and should be dismissed without further briefing.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 28th day of March 2023, the foregoing document was served on all parties through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

    Anthony C. Gunter
    1030 Dumbarton Road
    Glen Burnie, MD 21060

                                            /s/
                                    Alexander V. Cranford

4870-8888-0985, v. 7